IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JIMMY WEATHERLY, | } | |
| TDCJ-CID NO.586417, | } | |
| Plaintiff, | } | |
| v. | } | CIVIL ACTION G-06-192 |
| NATHANIEL WADE, *et al.*, | } | |
| Defendants. | } | |

OPINION ON DISMISSAL

Plaintiff Jimmy Weatherly, an inmate incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID"), filed a *pro se* complaint alleging violations of his civil rights under 42 U.S.C. § 1983 (Docket Entry No.1) and Answers to Interrogatories Ordered by the Court. (Docket Entry No.20). The Court adopted the Magistrate Judge's Report and Recommendation and dismissed plaintiff's claims against defendants J.P. Guyton and Kelvin Scott with prejudice. (Docket Entries No.21, No.22). Defendant Nathaniel Wade has filed a motion for summary judgment. (Docket Entry No.32). Plaintiff did not file a response to the motion.

Plaintiff seeks declaratory relief, and compensatory and punitive damages. (Docket Entry No.1, page 3). For the reasons to follow, the Court will grant defendant's motion for summary judgment and dismiss plaintiff's complaint with prejudice.

BACKGROUND

Plaintiff alleges that the following events took place on the Ramsey I Unit of TDCJ-CID and gave rise to the pending civil rights complaint:

"On June 13, 2004, Defendant Wade subjected Weatherly to an unwarranted and unnecessary use of excessive force, resulting in Weatherly sustaining permanent injury to his

1

wrists by the improper use of handcuffs." (Docket Entry No.1). In Step 1 Grievance No.2004191667, plaintiff stated that on the same date around noon, he observed Sgt. Wade outside the dining hall checking inmates for contraband. (*Id*., page 6). Wade stopped him and questioned him about the contents of plaintiff's pockets. (*Id.*). Plaintiff indicated that he had tissues in his pocket and produced the same for Wade's inspection. (*Id*.). Wade appeared angry and ordered plaintiff to pick up bread from the floor. (*Id*.). Plaintiff explained that he had a medical condition that prevented him from bending at the waist or squatting. (*Id*.). Wade said he did not want to hear it. (*Id*.). Plaintiff proceeded down the hall and Wade ordered him to pick up paper on the ground. (*Id.*). Plaintiff attempted to explain his condition but Wade ran up and grabbed plaintiff, twisted his right arm behind him and cuffed plaintiff's wrists so tightly that his skin was cut. (*Id*.). Wade then pulled plaintiff's arms up until his back was bent over and injured. (*Id.*). He walked plaintiff to administrative segregation and placed him in a holding cage. (*Id*.). As they walked, Wade screamed obscenities and refused to listen to plaintiff's complaints that the cuffs were too tight. (*Id*.). For the next two hours, Wade kicked the cage door, yelled obscenities and threatened plaintiff. (*Id*.). Plaintiff requested an investigation. (*Id*., page 7). The grievance was forwarded to the Regional Office of the Inspector General, which declined to open an investigation. (*Id.*). Sgt. Wade denied using profanity and indicated that he only threatened to charge plaintiff with a disciplinary violation if he continued to act up. (*Id.*).

In Step 2 Grievance No.2004191667, plaintiff complained that no one had investigated his excessive force claim even though Assistant Warden Scott had investigated the incident immediately after it occurred and ordered Lt. Lewis to have plaintiff examined by medical staff. (*Id*., page 8). Further investigation, however, found no new evidence to support plaintiff's allegations of staff misconduct. (*Id*., page 9).

Plaintiff was seen periodically in the infirmary for his handcuff injury. (*Id.*, pages 1-5). He was not hospitalized for his injuries. (Docket Entry No. 20, page 5).

Defendant Wade moves for summary judgment on grounds that plaintiff's claim is barred by *res judicata* and plaintiff cannot overcome Wade's entitlement to qualified immunity. (Docket Entry No.32).

## STANDARD OF REVIEW

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

## DISCUSSION

The Civil Rights Act of 1866 creates a private right of action for redressing the violation of federal law by those acting under color of state law. 42 U.S.C. § 1983; *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984). Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights conferred

elsewhere. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To prevail on a section 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). A section 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). Thus for plaintiff to recover, he must show that the defendants deprived him a right guaranteed by the Constitution or the laws of the United States. *See Daniels v. Williams*, 474 U.S. 327, 329-31 (1986).

### *Res Judicata*

Sgt. Wade contends that the pending suit is barred by the doctrine of *res judicata*. Wade notes that plaintiff originally filed suit in a Brazoria County, County Court at Law, alleging that he suffered a personal injury as a result of a criminal assault by Wade. (Docket Entry No.32, page 4, Exhibit 1). Wade claims that he filed a motion for summary judgment in state court addressing plaintiff's claims, including the excessive force claim. (*Id*., page 4). Two weeks later, plaintiff filed the pending excessive force claim in this Court. (*Id*.). On May 25, 2006, the state county court at law granted Wade's motion for summary judgment and dismissed plaintiff's suit because "plaintiff failed to properly plead his cause of action under the Texas Torts Claims Act." (*Id*., page 4, Exhibit 2).

When a federal court is asked to give claim preclusive effect to a state court judgment, the federal court must look to the *res judicata* principles of the state from which the judgment was entered. *U.S. ex rel. Laird v. Lockheed Martin Eng'g and Sci. Servs. Co*., 336 F.3d 346, 357 (5th Cir. 2003), *abrogated on other grounds by Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007). In Texas, a "proponent must demonstrate the existence of three elements:

4

(1) there was a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of the parties or those in privity with them exists between the two actions, and (3) the second action is based on the same claims as were raised or could have been raised in the first action." *Id.* referring to *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

In this case, the state county court at law did not enter a final judgment on the merits but dismissed the case because plaintiff did not properly plead his cause of action. *Res judicata* precludes re-litigation of claims that have been finally adjudicated. *Amstadt*, 919 S.W.2d at 652. The final judgment in defendant's Exhibit 1, does not reflect that plaintiff's claims were finally adjudicated or that they were dismissed with prejudice. Without more, defendant Wade fails to show that *res judicata* should apply in this case.

## Qualified Immunity

Alternatively, Wade contends that he is entitled to qualified immunity from suit on plaintiff's excessive force claim. (Docket Entry No.32). Wade maintains that the summary judgment record shows that as a matter of law plaintiff's injuries were *de minimis* and that such injuries evince *de minimis* force. (Docket Entry No.32).

Qualified immunity shields government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "Whether a defendant asserting qualified immunity may be personally liable turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law." *Fraire v. City of Arlington*, 957 F.2d 1268, 1272 (5th Cir. 1992).

Prior to the United States Supreme Court's decision in *Pearson v. Callahan*, 77 U.S.L.W. 4068, 2009 WL 128768 ( U.S. Jan. 21, 2009), "[t]he threshold inquiry a court [was

5

required to take] in a qualified immunity analysis [was] whether plaintiff's allegations, if true, establish[ed] a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). "If no constitutional right would have been violated were the allegations established, there [was] no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the allegations establish a constitutional violation, the court next consider[ed] whether the defendants' actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope*, 536 U.S. at 739 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The *Pearson* Court, however, held that consideration of the issues in this sequence is no longer mandatory. 2009 WL 128768 at *9. This Court, however, finds that the traditional sequence is most applicable in this case.

When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002). Even so, on summary judgment, the court must look to the evidence before it in the light most favorable to the plaintiff when conducting a qualified immunity inquiry. *Id.* at 323.

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. *Hudson v. McMillian,* 503 U.S. 1, 5 (1992). To establish an excessive force claim, an inmate must show that the force was not applied "in a good faith effort to maintain or restore discipline," but rather was administered in a malicious and sadistic manner to cause harm. *Id.* at 8. The analysis of an excessive force claim includes an objective and a subjective component. Under the objective component, a court must determine whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Id.* quoting *Wilson v. Seiter*, 501 U.S. 294, 302 (1991). Not every malevolent touch

by a prison guard gives rise to a federal cause of action. *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986).

Under the subjective component, a plaintiff must show that the defendant acted "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. The subjective intent of the officer may be determined by considering the following objective factors: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible official; and (5) any efforts made to temper the severity of the forceful response. *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993). The court "may look to the seriousness of the injury to determine "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" *Brown v. Lippard*, 472 F.3d 384, 387 (5th Cir. 2006) (quoting *Whitley*, 475 U.S. at 321)).

"The use of . . . handcuffs [is a] restraint commonly used on inmates, even those of a preferred status." *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). The use of restraints for punitive purposes violates the Constitution. *Fulford v. King*, 692 F.2d 11, 14-15 (5th Cir. 1982). Handcuffing an inmate too tightly, without more, does not amount to an excessive use of force. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).

The undisputed record, in this case, shows that plaintiff's behavior required defendant Wade to use force to restore order and discipline after plaintiff twice refused to obey

7

an order. Wade attests that he observed plaintiff bringing food out of the chow hall in violation of TDCJ-CID policy. (Docket Entry No.32-4). He twice ordered plaintiff to come to him but plaintiff refused and used abusive language, in violation of TDCJ disciplinary rules. (*Id.*). Plaintiff alleges that Wade questioned him about contraband outside the chow hall. (Docket Entry No.1). He states that he twice refused an order by Wade to pick up objects on the ground because of his medical restrictions and that he walked away from Wade. (*Id.*).

The undisputed record also shows that the force expended was short-lived. Both parties state that Wade cuffed plaintiff and escorted him to a holding cage. Wade attests that after plaintiff ignored his orders, he intercepted plaintiff and placed him in hand restraints and escorted him to a holding cell, where he removed the hand restraints. (Docket Entry No.32-4). Plaintiff does not dispute that Wade removed the cuffs when Wade placed plaintiff in the holding cage.

The undisputed record further shows that the hand restraints were tight enough to cause superficial bruising and abrasions to plaintiff's wrists but were not so tight that they caused a physical injury to the bones, soft tissue or nerves in plaintiff's hands or wrists.[1] *Compare*

---

[1] Dr. Natascha Dumas attests, as follows, to plaintiff's medical records with respect to his hand and wrist complaints:
> On review of the Plaintiff's medical records, it was noted that on exam by a unit nurse, Mr. Weatherly sustained contusions and abrasions on both writs after a use of force on June 13, 2004. The plaintiff was examined by a unit medical provider on June 17, 2004, after complaints of "hands and fingers" becoming 'swollen" and "my fingers tingled and were numb" and throbbing" "pain in my writs and hands." The exam was normal except for abraded areas of the dorsum of both wrists. The patient was treated [with] indomethacin, a non-steroidal anti-inflammatory medication for discomfort. The patient complained again about swelling of the hands on June 28, 2004. He was treated with indomethacin at that time. The plaintiff reported a possible broken bone and tingling in the right hand and wrists on July 14, 2004, and was evaluated by a unit medical provider on July 19, 2004. The exam of the right wrist and hand were normal except the plaintiff complained of pain with every range of motion tested. An x ray was done of the right wrist on July 21, 2004—it was normal. The x ray revealed no bone pathology or fracture and normal soft tissue. The radiology report and results were discussed with plaintiff on July 26, 2004. On November 11, 2004, the plaintiff was seen again for right wrist and hand pain. Again, a normal exam was noted. A right wrist splint was provided for the plaintiff for comfort. The

*Dominguez v. Moore*, 149 Fed. Appx. 281, 283 (5th Cir. 2005) (finding the refusal to loosen handcuffs constituted excessive force because plaintiff's hands became "grossly swollen" and resulted in permanent scarring and nerve injury). Plaintiff periodically sought treatment of pain and swelling in his hands, which he attributed to the tight cuffs. Plaintiff also sought mental-health counseling on one occasion, complaining of post-traumatic stress from the incident.

The record, however, does not establish as a matter of law that Wade was aware that the cuffs were too tight. Plaintiff claims Wade cuffed him too tightly and refused to listen to his complaints regarding the tightness of the cuffs. (Docket Entry No.1). Wade claims that plaintiff did not complain that the restraints were too tight or that he was injured, and Wade did not observe an injury to plaintiff from the hand restraints. (Docket Entry No.32-4). Even if

---

plaintiff continued to complain of his hands swelling on November 8, 2004. An appointment was scheduled for the plaintiff for November 15, 2004 to address the swelling of his hand; however, he did not show for the appointment.

The plaintiff has claimed to have permanent nerve damage in both wrists but there is no physical evidence of any nerve damage on exam. Mr. Weatherly had no atrophy of the thenar muscles in the hands and no sensory or motor deficits in either hand or wrist on exam.

The patient also claims to have suffered mental stress and Post-traumatic stress from the "use of force" on June 13, 2004. However, the patient did not seek professional mental assistance except once on June 18, 2004. At that time, he appeared to overly-concerned about having to work after being medically unassigned for over one year. The discussion of the stress received minimal discussion from the plaintiff—as noted by the mental health provider. The patient was seen by a mental health professional on June 7, 2004, for mood swings—several days before the reported use of force.

(Docket Entry No.32-5, pages 4-5). Dr. Dumas opined that plaintiff sustained only superficial injuries to his wrists, which have since healed and that he did not suffer stress or post traumatic stress from the alleged use of force. (*Id*., page 5).

The medical records attached to the motion for summary judgment support Dr. Dumas's attestations. (Docket Entry No.32-6, pages 3-10). Nurse Sandra Smock noted on June 17, 2004, plaintiff's complaints of bilateral hand pain that plaintiff attributed to the cuffs and the "narrow abraded area dorsum of both wrists." (*Id.*, pages 4-5). She also noted that she observed no edema of joints, no drainage, and a normal exam. (*Id.*, page 4). On July 19, 2004, plaintiff complained of right wrist pain that he attributed to "handcuffs being too tight" about a month ago. (*Id.*, page 7). The exam should no sign of trauma or deformity and all exams were normal except for plaintiff's complaint on all range of motions. (*Id*.). An x-ray showed "[n]o recent fracture or acute bone pathology can be identified. Articular relationships are intact. Soft tissues are within normal limits." (*Id*., page 8). After plaintiff complained of knee and right wrist pain on November 2, 2004, the Physician's Assistant diagnosed him with unspecified muscle pain and inflammation. (*Id*., page 10).

Wade was aware that the cuffs were too tight and yet refused to loosen them, plaintiff has not shown that the force expended was constitutionally excessive. While this Court does not condone such behavior, it notes that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Hudson*, 503 U.S. at 9.

In this case, the record does not support a finding that defendant Wade cuffed plaintiff without justification and that he maliciously intended to punish or harm plaintiff by the use of hand restraints. The name-calling that plaintiff alleges Wade engaged in while transporting plaintiff to the holding cage does not evince the wantonness associated with an Eighth Amendment violation; nor does the alleged harassment and threats that plaintiff alleges Wade engaged in for two hours after he placed plaintiff in the holding cell. By that time, the force giving rise to plaintiff's Eighth Amendment claim had been expended. *See McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (finding the threats and gestures of a custodial officer, without a physical assault, do not amount to a constitutional violation even if true).

Accordingly, defendant Wade is entitled to summary judgment on his qualified immunity claim.

## CONCLUSION

Based on the forgoing, the Court ORDERS the following:

1. Defendant's motion for summary judgment (Docket Entry No.32) is GRANTED.

2. Plaintiff's complaint is DISMISSED WITH PREJUDICE.

3. All pending motions, if any, are DENIED.

It is so ORDERED.

SIGNED at Houston, Texas, this 2nd day of March, 2009.

                                              MELINDA HARMON
                                   UNITED STATES DISTRICT JUDGE